IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:11-CV-0095-D |
| VS. | § | |
| | § | |
| SHERRILL PETTUS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

The instant motion to dismiss the third-party action in this case presents the dispositive question whether the third-party plaintiff is asserting only separate and independent claims that are not properly brought under Fed. R. Civ. P. 14. Concluding that he is, the court grants the motion and dismisses the third-party action without prejudice.

I

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") filed this suit against defendant Sherrill Pettus ("Pettus") seeking to recover on his unconditional guaranty.[1] Pettus, who is the principal of Steel Stadiums, LLC ("Steel Stadiums"), personally and unconditionally guaranteed Steel Stadiums' obligations under an aircraft lease with Wachovia Financial Services, Inc., which later merged with Wells Fargo. Wells Fargo alleges that, in 2010, Steel Stadiums twice defaulted on its monthly lease obligations. After Steel Stadiums filed for

---

[1]The court recounts the facts favorably to Pettus as the nonmovant. *See Cramer v. Skinner,* 931 F.2d 1020, 1025 (5th Cir. 1991); *Royal Bank of Can. v. FDIC,* 733 F. Supp. 1091, 1094 (N.D. Tex. 1990) (Fitzwater, J.).

bankruptcy, Wachovia obtained relief from the automatic stay allowing it to repossess the aircraft, accelerated Steel Stadiums' remaining rental balance, and terminated the lease. Wells Fargo seeks approximately $7.9 million in damages from Pettus for breaching his guaranty.

As third-party plaintiff, Pettus has impleaded third-party defendant Meridian Bank N.A., d/b/a Meridian Bank Texas ("Meridian"). He alleges that Steel Stadiums' default, and his liability as guarantor, resulted from Meridian's illegal management of loans it made to Steel Stadiums.[2] Pettus alleges that Meridian made onerous revisions to the terms of these loans, but that Steel Stadiums remained current on its payments to Meridian until at least the spring of 2010. According to Pettus, Meridian began to solicit prospective investors in Steel Stadiums in mid-2010. Pettus maintains that by publicizing the company's financial difficulties, Meridian breached the duty of privacy it owed Steel Stadiums as a customer, tarnished its reputation, and deterred prospective lenders and investors. In July 2010 Meridian sent a letter to Steel Stadiums' customers advising them that the bank had taken over the business and directing the customers to send all payments due Steel Stadiums to the bank. Many of Steel Stadiums' customers then refused to fulfill their payment obligations, and in turn Steel Stadiums defaulted on a number of its contracts. In July 2010 Meridian sent

---

[2]Meridian extended three different loans to Steel Stadiums and Pettus between late 2007 and December 2008: a $3 million revolving line of credit and separate $1 million loan to Steel Stadiums, and a $1.9 million loan to Pettus secured by the real property where Steel Stadiums was located. From the time it made the loans to Steel Stadiums until mid-2010, Meridian waived loan provisions, extended deadlines, offered additional financing, and urged Steel Stadiums to hire a new financial officer.

Pettus a letter declaring the unpaid principal and interest accrued on the loans immediately due and payable.  Pettus maintains that Meridian accelerated Steel Stadiums' debts in error because its payments to the bank were current and because Meridian did not provide proper notices of default and acceleration.  Meridian also brought a garnishment action against Steel Stadiums and successfully froze assets of the company held by other institutions.  Pettus contends that Meridian brought the garnishment action in error because it had not yet exhausted the collateral securing its loans to Steel Stadiums.  Steel Stadiums has since been unable to continue its operations and has been sued for failing to perform its contracts.

In his third-party complaint, Pettus asserts 21 claims against Meridian: breach of contract, breach of fiduciary duty, misrepresentation and negligent misrepresentation, tortious interference with business relations, civil conspiracy, violations of the Texas Deceptive Trade Practices-Consumer Protection Act, negligence, promissory estoppel, conversion, unjust enrichment and quantum meruit, joint enterprise, violations of the Theft Liability Act, aiding and abetting, usury, trade secret appropriation, fraud in the inducement, fraud by non-disclosure, statutory fraud, contribution, indemnity, and declaratory judgment.

Meridian moves to dismiss the third-party action as improper under Rule 14.[3]  It argues that Pettus' third-party action does not satisfy Rule 14 because Meridian cannot be derivatively liable to Wells Fargo for Pettus' breach of guaranty and because Pettus' claims

---

[3]It is not clear whether Meridian moves to dismiss under Rule 14(a)(1) or to strike under Rule 14(a)(4).  The court need not resolve this question because it applies the same standard to both.

against Meridian arise out of a different set of transactions and occurrences than does Wells Fargo's claim against him. Meridian moves in the alternative to dismiss Pettus' third-party complaint under Rules 8, 9, and 12(b)(6) for failure to state a plausible claim to relief.[4]

## II

Rule 14(a) provides that a defending party, as third-party plaintiff, may sue "a nonparty who is or may be liable to it for all or part of the claim against it."  The policy underlying Rule 14 is to promote judicial economy by eliminating circuitous actions.  *See* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1442, at 339 (3d ed. 2010 & Supp. 2011).  Impleader is appropriate, however, "only in cases where the third party's liability [is] in some way derivative of the outcome of the main claim."  *U.S. v. Joe Grasso & Son, Inc.,* 380 F.2d 749, 751 (5th Cir. 1967); *see also Am. Express Travel Related Servs. Co. v. Beaumont*, 2002 WL 31298867, at *2 (N.D. Tex. Oct. 9, 2002) (Buchmeyer, J.) ("[T]he procedural device of impleader [may only be used] when the third party defendant's potential liability is dependent upon the outcome of the main claim.").  In other words, "the third party must necessarily be liable over to the defendant for all or part of the plaintiff's recovery."  *Joe Grasso & Son,* 380 F.2d at 751.  "The third-party procedure is not designed as a vehicle for the trying together of separate and distinct causes of action, or for the introduction, into the main action, of several parallel, but independent, actions, or separate and independent claims[.]"  *Majors v. Am. Nat'l Bank of Huntsville,* 426 F.2d 566,

---

[4]Because the court concludes that Pettus' third-party action is improper under Rule 14, it need not consider Meridian's alternative arguments.

568 (5th Cir. 1970) (per curiam) (internal quotation marks and citations omitted).  If the

third-party claim is an entirely independent claim, it will be dismissed even if it arises from

the same set of facts as the original claim.  *See Baylor Univ. Med. Ctr. v. Epoch Grp., L.C.,*

2005 WL 2124126, at *4 (N.D. Tex. Sept. 1, 2005) (Fish, C.J.) (citing *Joe Grasso & Son,*

380 F.2d at 751).

> The crucial characteristic of a Rule 14 claim is that defendant is
> attempting to transfer to the third-party defendant the liability
> asserted against [him] by the original plaintiff.  The mere fact
> that the alleged third-party claim arises from the same
> transaction or set of facts as the original claim is not enough.

6 Wright & Miller, *supra*, § 1446, at 431-32.

### III

The dispositive question presented by the motion to dismiss is whether Pettus' claims

against Meridian are separate and independent, not derivative, of Wells Fargo's claim against

Pettus.

### A

Meridian primarily urges that the third-party action is improper under Rule 14 because

Pettus' claims against Meridian do not turn on the outcome of Wells Fargo's claims against

him.  Meridian contends that its loans to Pettus and Steel Stadiums are completely unrelated

to Steel Stadiums' aircraft lease and Wells Fargo's claim against Pettus as guarantor of the

lease.  It maintains that it made only general loans to Pettus and Steel Stadiums, and that it

undertook no duty respecting Pettus' guaranty of Steel Stadiums' aircraft lease.  Meridian

also posits that Pettus cannot show that its actions caused him to default on his guaranty

obligations to Wells Fargo because Steel Stadiums defaulted on the aircraft lease on February

28 and June 4, 2010, and Meridian did not contact Steel Stadiums' customers until July 15

or accelerate Steel Stadiums' debt until July 19.

Pettus responds that Meridian's liability is derivative of his own liability to Wells

Fargo because, but for Meridian's actions, he would not have breached his guaranty of Steel

Stadiums' aircraft lease.  He contends that Meridian's acceleration of his debt and letters to

Steel Stadiums' creditors made him unable to fulfill his guaranty obligation to Wells Fargo

because, as a result of these actions, Steel Stadiums' customers refused to pay approximately

$5 million in receivables and pursued claims against Steel Stadiums.  Pettus also disputes

Meridian's denial that it caused his losses, and he denies its assertion that he defaulted on his

guaranty obligation before it took the actions of which he complains.  He contends that

Meridian's June 2009 alterations to the terms of the loans both predated and caused his

breach of guaranty.  Alternatively, he posits that his claim against Meridian is properly joined

under Rule 18 because that Rule permits a party asserting a third-party complaint to join its

additional independent claims against an opposing party.

B

The court holds that Pettus' third-party action against Meridian is improper because

the claims are separate and independent, not derivative, of Wells Fargo's claim against

Pettus.  "The suggestion that a separate and independent claim can be made the proper

subject of a third party complaint because, but for the violation of duty alleged the main

claim would not have matured, has been rejected by [the Fifth Circuit] and other courts."  *Se.*

*Mortg. Co. v. Mullins,* 514 F.2d 747, 750 (5th Cir. 1975) (citing *Majors*, 426 F.2d at 568).

In Pettus' case, "the nexus with the principal action is not that it establishes the *right to* relief,

but merely the *need for* relief." *Id*. (emphasis added). Wells Fargo's principal claim in this

case is that Pettus breached his guaranty of the aircraft lease to Steel Stadiums. In contrast,

Pettus alleges in his third-party action that Meridian breached the terms and duties of

separate agreements—the loans it made to Steel Stadiums and to Pettus. The fundamental

flaw in Pettus' argument is that his obligations to Wells Fargo were in no way dependent on

Meridian's obligations to him.[5] *See, e.g., Autoronic Sys., Inc. v. HRSG, Inc.,* 2008 WL

8053985, at *1 (S.D. Tex. Mar. 4, 2008) (denying impleader where third-party plaintiff

alleged he was unable to pay plaintiff subcontractors because third-party defendant failed to

make timely payments under separate contract); *see also Cont'l W. Cas. Co. v. Steel*

*Stadiums, LTD.,* No. 3:10-CV-1597-P, at *3-4 (N.D. Tex. Apr. 4, 2011) (Solis, J.) (granting

Meridian's motion to dismiss third-party complaint asserting claims allegedly derivative of

another plaintiff surety company's claims against Steel Stadiums and Pettus). In other words,

Meridian could not be secondarily liable for Pettus' breach of guaranty to Wells Fargo, even

if Wells Fargo would have no cause of action against Pettus absent Meridian's actions. Any

claim Pettus may assert against Meridian "does not emanate from the main claim but exists

wholly independent of it." *Se. Mortg.*, 514 F.2d at 750. Moreover, even assuming, as Pettus

---

[5]Pettus argues that his allegations that Meridian changed the terms of its loans in June 2009 are sufficient to establish that Meridian began to cause his breach of guaranty *before* Steel Stadiums defaulted on its lease payments to Wells Fargo in 2010. Regardless, his action against Meridian is still independent of Wells Fargo's suit against him.

argues, that his claims against Meridian arise out of the same general set of facts as does Wells Fargo's claim against him, "an entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim." *Joe Grasso & Son*, 380 F.2d at 751; *see also Baylor Univ. Med. Ctr.*, 2005 WL 2124126, at *4.

Nor is Pettus' claim against Meridian properly joined under Rule 18, as he contends in his response brief. Rule 18(a) provides that "[a] party asserting a . . . third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." To join an independent or alternative claim against a third-party defendant under Rule 18, a third-party plaintiff must first assert a proper third-party claim. *See, e.g., Crompton-Richmond Co., Factors v. United States*, 273 F. Supp. 219, 221 (S.D.N.Y. 1967) (noting Rule 18 makes clear that, "*assuming* the third-party complaint to be otherwise proper, additional claims against third-party defendants are permissible.") (emphasis added); *see also* 6A Wright & Miller, *supra*, § 1583, at 702 ("*once parties are properly joined*, any party asserting a claim (whether it be an original claim . . . or third-party claim) may join as many claims as the party has against an opposing party[.]"). As the court has explained, Pettus' third-party action does not assert a proper third-party claim against Meridian, and he cannot join independent third-party claims under Rule 18 without first pleading a proper third-party action.

* * *

For the reasons explained, Meridian's motion to dismiss is granted, and Pettus' third-party action is dismissed without prejudice by judgment filed today.[6]

**SO ORDERED.**

August 16, 2011.

SIDNEY A. FITZWATER
CHIEF JUDGE

---

[6]The court dismisses the third-party complaint without prejudice to avoid possible confusion concerning the res judicata effect of its opinion. *See Se. Mortg.*, 514 F.2d at 750.